FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SEBASTIAN HERNANDEZ,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SGT. LAING – HOUSING SERGEANT,<br>LT. GIBNEY – HOUSING<br>LIEUTENANT; LT. NIECKO,<br>LT.WILSON; SGT. BALL,  and CPL.<br>GUTHIER,<br><br>　　　　　　　Defendants. | Case No. 1:22-cv-00083-BLW<br><br>**INITIAL REVIEW ORDER<br>BY SCREENING JUDGE** |

　　　　The Clerk of Court conditionally filed Plaintiff Sebastian Hernandez's Complaint and Amendments as a result of Plaintiff's status as an inmate and in forma pauperis request. Dkts. 1, 3, 7, 9. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A.

　　　　The Court must review complaints filed by prisoners to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## REVIEW OF COMPLAINT

Plaintiff alleges that there is no regular barber in his prison housing unit. As a result, he has not been able to get a haircut in three months. When he filed a grievance, prison officials responded that they have been working to train a barber to be biohazard qualified, and for the time being, there was a barber in a different unit who cut hair on Sundays. However, because of the number of inmates seeking a haircut, the length of time for the wait was fairly long.

Plaintiff asserts that the lack of a haircut is "affecting [his] hygiene and psychological stability and compromises [his] religious right and rituals." Dkt. 3-1. He also asserts that he cannot engage in "ritual cleansing in order to pray to [his] god." Dkt. 3, p. 2.

Plaintiff's Complaint lacks factual details about what type of religion he practices and what type of ritual cleansings are required. He also does not state why he cannot wash his hair and achieve cleansing in that manner. For example, he should explain whether, under his particular religion, it is impossible for a person who wears long hair to practice that religion. He should also provide an update as to the barbering situation in his unit. Because there is insufficient information in the Complaint and Amendments to permit Plaintiff to proceed, the Court will order Plaintiff to file one comprehensive Amended Complaint.

The Court will also order Defendants to provide a brief Martinez report regarding the past and current status of barbering, including whether immediately moving Plaintiff to a unit or facility with greater access to a barber will solve his religious issues if the

prison has been unable to resolve the barbering issues in Plaintiff's current unit. The Ninth Circuit approved the use of Martinez reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008), concluding that, "[a]s a permissible option within its broad discretion, a district court in an appropriate case can issue a Martinez-style order that is reasonably tailored to the pretrial needs of the district court to assess the case."

## INSTRUCTIONS FOR AMENDMENT

The Court provides the following guidelines for an amended complaint. An amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1. An amended pleading completely replaces the original pleading.

The First Amendment free exercise of religion clause absolutely protects the right to believe in a religion, but it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296 (1940). Inmates clearly retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). The courts, therefore, must balance prisoners' First Amendment rights against the goals of the correctional facility. *Bell v. Wolfish*, 441 U.S. 520 (1979). Particularly, "when a prison regulation [or practice] impinges on

inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 87 (1987).

The Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc (RLUIPA), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Under RLUIPA, the inmate bears the initial burden of showing that the prison's policy constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

RLUIPA does not provide for damages against the states or state defendants in their *official* capacities because of Eleventh Amendment immunity. *See Sossamon v. Texas*, 131 S.Ct. 1651, 1663 (2011). Further, "there is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

The proper state defendant in an action seeking prospective injunctive relief is the one who "would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims." *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012).

For each defendant Plaintiff includes in his amended complaint, he must state the "who, what, when, where, why, and how" of each allegedly wrongful act that each committed. Plaintiff must allege a sufficient causal connection between each defendant's actions and the claimed deprivation of his constitutional rights, unless the defendant is included for injunctive relief purposes only. *See Taylor v. List*, 880 F.2d 1040, 1045 (1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Amend Complaint (Dkt. 9) is GRANTED, only to the extent that Plaintiff must file one complete, corrected amended complaint within **15 days** after entry of this Order. Failure to do so will result in dismissal of this action without further notice.

2. The Clerk of Court shall serve, via the ECF system, a copy of this Order and Plaintiff's Complaint (Dkts. 3, 9) on the following counsel on behalf of Defendants: **Mary Karin Magnelli**, Deputy Attorney General for the State of

Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706.

3. The Clerk need not send a waiver of service of summons at this time, because the case remains in screening status.

4. Counsel for Defendants are requested to make a limited appearance for the purpose of providing a very brief Martinez report, supported by any relevant prison records. The Martinez report should be filed within **60 days** after the filing of the amended complaint.

5. The Martinez report does not need to be in any particular format, but counsel can present the report in any organized manner that makes sense in response to the allegations of the Complaint and this Order. Exhibits that implicate privacy or security concerns may be filed under seal or in camera, as may be appropriate. Exhibits filed in camera must be accompanied by a privilege or security log that is provided to Plaintiff.

6. Plaintiff may file a response of no more than ten pages to the Martinez report within **15 days** after the report is filed.

DATED: October 4, 2022

B. Lynn Winmill
U.S. District Court Judge